**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEAN C. ROGERS,<br><br>          Plaintiffs,<br><br>v.<br><br>NEKJIE ISMAILI, SGT. L. LAFORD, *Badge No. 30, Lopatcong Police Department*; OFFICER S. COX, *Badge No. 32, Lopatcong Police Department*; OFFICER S. RIVERA, *Badge No. 45, Lopatcong Police Department*; LOPATCONG TOWNSHIP POLICE DEPARTMENT; CHIEF JASON W. GARCIA; and LOPATCONG TOWNSHIP<br><br>          Defendants. | Civil Action No.<br><br>25-15245 (SDW) (LDW)<br><br>**OPINION AND ORDER** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is *pro se* plaintiff Dean C. Rogers' motion for leave to file a proposed second amended complaint ("PSAC").[1]   (ECF 23).   Defendants Township of Lopatcong, Lopatcong Township Police Department, Lopatcong Police Chief Jason W. Garcia, Sergeant Louis LaFord, Officer Scott Cox, and Officer Samuel Rivera (collectively, the "Lopatcong defendants") oppose the motion.  (ECF 26).  For the following reasons, plaintiff's motion to amend is **DENIED**.

**I. BACKGROUND**

This federal civil rights action arises out of three Lopatcong police officers' response to a "peace-keeping call" regarding a domestic dispute between plaintiff and defendant Nekjie Ismaili.

---

[1]    The parties erroneously refer to the pleading as the "proposed third amended complaint." (*See* ECF 23; ECF 26).

(PSAC, ECF 23-1 ¶ 14).  Plaintiff filed his original complaint in this Court in August 2025. (Complaint, ECF 1).  On the basis of sparse factual allegations, he asserted several claims against the Township of Lopatcong's ("Township") police department and the individual officers involved in the response for violation of his federal constitutional rights, pursuant to 42 U.S.C. § 1983.  (*Id.* at 2–3).  Plaintiff also brought a claim for defamation against defendant Ismaili.  (*Id.* at 2).

In December 2025, before any defendant had responded to the original complaint, plaintiff filed the first amended complaint ("FAC") as of right under Federal Rule of Civil Procedure 15(a)(1)(B).  (FAC, ECF 10).  Like the original complaint, the FAC asserts several claims for alleged violations of plaintiff's federal rights as well as related state law claims.  (*Id.* at 2).  It also adds the Township as a defendant.  (*Id.* at 1).  But the pleading is entirely devoid of any supporting factual allegations.  (*See id.*).

Shortly after the FAC was filed, the Lopatcong defendants moved to dismiss for failure to state a claim.  (ECF 13).  Plaintiff initially opposed dismissal (ECF 17) and then filed the instant motion to amend.  (ECF 23).  The Court terminated the motion to dismiss without prejudice pending its resolution of this motion.  (ECF 28).[2]

According to the PSAC, Sergeant LaFord, Officer Cox, and Officer Rivera arrived at 351 Shannon Court in Lopatcong, New Jersey (the "Residence") on March 2, 2025 at 4:18 P.M. in response to a "peace-keeping call" regarding a dispute between plaintiff and defendant Ismaili. (ECF 23-1 ¶¶ 11–15).  Upon the officers' arrival, plaintiff claims that he "immediately cooperated, identified himself, and informed [officers] that no crime had been committed."  (*Id.* ¶ 16).  The officers allegedly directed plaintiff "to remain and restricted his movement."  (*Id.* ¶ 17).  While

---

[2]    After the instant motion to amend had been filed, defendant Ismaili filed a separate motion to dismiss the FAC.  (ECF 27).  The Court similarly terminated Ismaili's motion without prejudice pending its resolution of the motion to amend.  (ECF 28).

plaintiff waited, the officers conducted a "warrant check" (*id.* ¶ 19) and "stated that there was a possible active warrant" for plaintiff's arrest. (*Id.* ¶ 21). Plaintiff allegedly "advised [the] officers that the warrant was unrelated to the incident" to which they were responding. (*Id.* ¶ 22). Plaintiff further alleges that he "asked what probable cause existed to run a warrant check," to which Sergeant LaFord "responded that probable cause was not required to run a name for a warrant." (*Id.* ¶ 23). The officers reportedly continued to detain plaintiff while they were "'waiting for a hit' regarding a possible child-support warrant." (*Id.* ¶ 24). Plaintiff was eventually arrested for a reason unspecified by the PSAC, "transported to the Lopatcong Police Station," and detained there "for approximately three hours." (*Id.* ¶ 26).

While plaintiff was in custody at the station, Sergeant LaFord allegedly "communicated with [d]efendant Ismaili regarding domestic-violence rights." (*Id.* ¶ 28). Specifically, plaintiff claims that LaFord and Ismaili worked together to obtain a temporary restraining order ("TRO") against him "based on false, misleading, or coached statements." (*Id.* ¶ 32; *see also id.* ¶ 29). This timeline is contradicted, however, by plaintiff's own pleading. According to the PSAC, the TRO in question had already "issued on or about March 2, 2025, at approximately 2:43 p.m.," more than an hour before the officers allegedly arrived at the Residence and long before plaintiff was taken to the station. (*Id.* ¶ 31; *see also id.* ¶ 15).

Plaintiff further avers that "[a]s a direct result" of his arrest and the TRO, he was "barred from returning to the Residence." (*Id.* ¶ 33). He claims he was thus "denied access to essential personal property" inside the Residence, "including clothing, keys, [his] phone, and personal documents." (*Id.* ¶ 34). When plaintiff sought "assistance to retrieve his property," unspecified officers allegedly "delayed the process and required Ismaili's permission." (*Id.* ¶ 35).

3

Based on these allegations, the PSAC asserts six claims under section 1983 for violation of plaintiff's federal rights: (1) a Fourth Amendment unreasonable seizure claim against Sergeant LaFord, Officer Cox, and Officer Rivera; (2) a Fourth Amendment false arrest claim against Sergeant LaFord, Officer Cox, and Officer Rivera; (3) a Fourteenth Amendment procedural due process claim against Sergeant LaFord, Officer Cox, Officer Rivera, and the Township; (4) a section 1983 conspiracy claim against Sergeant LaFord and defendant Ismaili; (5) a section 1983 municipal liability claim against the Township; and (6) a section 1983 supervisory liability claim against Chief Garcia. (ECF 23-1 at 5–6).[3]

## II. DISCUSSION

Under Federal Rule of Civil Procedure 15, courts "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, a court may exercise its discretion to deny a motion to amend if the motion: (1) is unduly delayed; (2) is made in bad faith or with dilatory motive; (3) would cause undue prejudice to the non-moving parties; or (4) proposes a futile amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Lopatcong defendants argue that plaintiff's motion should be denied under the last of these factors because the claims in the PSAC are futile. (*See* ECF 26 at 7–14).[4]

A proposed amended complaint is futile if "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Garrett v. Subaru of Am., Inc.*, 23-CV-20971 (CPO), 2026 WL 594245, at *3 (D.N.J. Mar. 3, 2026) (quoting *In re Burlington Coat Factory Sec. Litig.*,

---

[3]    The PSAC would also remove the Township's Police Department as a defendant. (*See* ECF 23-1 at 1).

[4]    The Lopatcong defendants do not advance arguments as to any of the other Rule 15 factors and the Court therefore does not address them. *See Grasso v. Consol. Rail Corp.*, 12-CV-398 (MAH), 2013 WL 3167761, at *8 (D.N.J. June 20, 2013).

114 F.3d 1410, 1434 (3d Cir. 1997)).  In assessing futility, a court "employs the same standard applied to Rule 12(b)(6) motions to dismiss."  *Holmes v. Christie*, 16-CV-1434 (MAH), 2023 WL 8016055, at *6 (Nov. 17, 2023) (citing *In re Burlington*, 114 F.3d at 1434).  Under that standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  It is defendants' burden to demonstrate futility.  *See Garrett*, 2026 WL 594245, at *3.

Plaintiff argues that the PSAC "[p]rovides a coherent factual narrative" for his claims and "[i]dentifies specific conduct by specific defendants."  (ECF 23 at 3).  Plaintiff also emphasizes that, as a *pro se* litigant, he should be afforded leniency in seeking to amend.  (*See id.*).  The Lopatcong defendants counter that the proposed amendments are futile because the PSAC "fails to . . . state a plausible claim for any of the" six asserted counts.  (ECF 26 at 9).  While the Court is mindful of plaintiff's *pro se* status, it agrees with the Lopatcong defendants that all six of the claims in the PSAC are futile and that the motion should thus be denied.  *See Lorah v. Home Helper's Inc. Del. Respite*, 454 F. App'x 29, 31 (3d Cir. 2011) (affirming district court's denial of *pro se* plaintiff's request to amend where "proposed amendments were . . . legally insufficient on [their] face" (internal quotations and citations omitted)).[5]

### A.    Fourth Amendment Unreasonable Seizure Claim (Count I)

Count I of the PSAC asserts a Fourth Amendment unreasonable seizure claim against Sergeant LaFord, Officer Cox, and Officer Rivera based on their allegedly restraining plaintiff

---

[5]    The Lopatcong defendants also argue that the claims against the individual officers are futile because they are barred by qualified immunity.  (ECF 26 at 14–17).  Given the other deficiencies in plaintiff's proposed claims, the Court need not reach the issue of qualified immunity.

inside the Residence while they responded to the peace-keeping call. (*See* ECF 23-1, Count I). But the Third Circuit has previously described it as "reasonable" for officers to briefly detain an individual while addressing a reported domestic dispute. *Cost v. Borough of Dickson City*, 858 F. App'x 514, 515, 519 n.10 (3d Cir.) (rejecting Fourth Amendment claims where officers temporarily handcuffed defendant while they swept house and spoke to other inhabitants), *cert. denied*, 142 S. Ct. 464 (2021). So, on its own, plaintiff's allegation that the "officers ordered [him] to remain and restricted his movement" while inside the Residence cannot serve as the basis of an unreasonable seizure claim. (ECF 23-1 ¶ 17). Plaintiff also alleges that his "detention was unreasonable because it was prolonged . . . beyond what was necessary to address the peace-keeping call." (*Id.* ¶ 41). But aside from this conclusory statement, the PSAC contains no specifics about how long plaintiff was detained inside the Residence or why it was longer than necessary given the circumstances.[6] In the absence of such details, the Court discerns no factual basis for an unlawful seizure claim based on the alleged restriction on plaintiff's movement while officers responded to the call. *Cf. United States v. Jackson*, 120 F.4th 1210, 1221 (3d Cir. 2024) ("In reviewing an officer's decisions, [courts] should not indulge in unrealistic second-guessing . . . and . . . must consider the totality of the circumstances." (internal quotations and citations omitted)), *cert. denied*, 145 S. Ct. 2827 (2025). For these reasons, Count I of the PSAC fails to state a claim for unlawful seizure and is thus futile.

### B.    Fourth Amendment False Arrest Claim (Count II)

Count II of the PSAC asserts a Fourth Amendment false arrest claim against Sergeant LaFord, Officer Cox, and Officer Rivera. (ECF 23-1, Count II). "To state a claim for false arrest

---

[6]    Plaintiff does allege that, after he was arrested, he was "held for approximately three hours" at the Lopatcong Police Station. (ECF 23-1 ¶ 26). But that allegation is unrelated to plaintiff's initial confinement inside the Residence.

in violation of the Fourth Amendment, a plaintiff must allege that (1) there was an arrest, and (2) the arrest was made without probable cause." *Hernandez v. City of Paterson*, 22-CV-6763 (SDW), 2023 WL 6876008, at \*7 (D.N.J. Oct. 18, 2023) (citing *Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).  Plaintiff claims that the "non-violent civil dispute" to which the officers were responding "did not supply probable cause for [his] arrest." (ECF 23-1 ¶ 44).  He also alleges that when the officers first arrived at the Residence, he "immediately cooperated, identified himself, and informed [the officers] that no crime had been committed." (*Id.* ¶ 16).  But the PSAC contains no factual allegations as to the Township's stated basis for plaintiff's arrest, making it impossible to conclude that plaintiff has plausibly alleged facts to support the claim that officers lacked probable cause to arrest him.  Plaintiff may have been arrested solely on the basis of his allegedly "non-violent civil dispute" with Ismaili.  (*Id.* ¶44).  Alternatively, the arrest may have stemmed from the "possibl[y] active" and "unrelated" warrant repeatedly referenced throughout the PSAC. (*See id.* ¶¶ 21, 22, 23, 24).  Or plaintiff might have been arrested based on some later interaction with the officers while he was detained in the Residence.  (*See id.* ¶¶ 17–20).  The PSAC simply does not say.  Instead, it baldly asserts that the domestic dispute to which the officers were responding "did not supply probable cause" to justify plaintiff's arrest under the Fourth Amendment. (ECF 23-1 ¶ 44).  That sort of conclusory allegation cannot sustain plaintiff's claim. *See McMillan v. City of Camden*, 21-CV-20237 (RBK), 2022 WL 2753222, at \*3 (D.N.J. July 14, 2022) (dismissing Fourth Amendment false arrest claim where plaintiff "merely states in conclusory fashion that [the officer] lacked probable cause").  Thus, Count II of the PSAC fails to state a claim and is futile.

### C.    Fourteenth Amendment Procedural Due Process Claim (Count III)

In Count III of the PSAC, plaintiff alleges that the arresting officers and the Township violated his procedural due process rights under the Fourteenth Amendment by barring his access to the Residence—and his personal property therein—during and after his detention.  (ECF 23-1, Count III).  "[A] plaintiff asserting" a procedural due process claim "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Thompson v. Richardson*, 23-CV-3534 (SDW), 2023 WL 4398502, at *2 (D.N.J. July 7, 2023) (quoting *Mullholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013) (internal quotation marks omitted).  To make out a procedural due process claim, a plaintiff must "explain[] what process he was owed and how that process was denied."  *Washington v. Hanshaw*, 552 F. App'x 169, 174 (3d Cir. 2014).

Plaintiff has not alleged a property interest in the Residence that the Fourteenth Amendment would protect.  The PSAC claims only that plaintiff "was present at [the Residence]" when LaFord, Cox, and Rivera arrived.  (*See* ECF 23-1 ¶ 11).  But nowhere does the PSAC claim that plaintiff owned, leased, rented, resided in, or otherwise enjoyed any legal right to use or access the Residence.  (*See* ECF 23-1).  Indeed, plaintiff alleges no factual details about the Residence aside from its address, leaving it entirely unknown who lived there.  (*See id.*).  Because the PSAC contains no allegations on which the Court could conclude he was denied access to property he had a right to enter, plaintiff has not plausibly alleged a violation of any interest or right "encompassed within the Fourteenth Amendment's protection of . . . property."  *Thompson*, 2023 WL 4398502, at *2 (internal quotations and citations omitted).

Plaintiff further claims that his inability to enter the Residence during and after his detention "denied [him] access to essential personal property" inside, "including clothing, keys, [his] phone, and personal documents." (ECF 23-1 ¶ 34). Relatedly, plaintiff alleges that unnamed officers delayed his eventual effort to retrieve that property and "required Ismaili's permission." (*Id.* ¶ 35). Assuming plaintiff had a protected property interest in these personal effects, he nevertheless fails to state a procedural due process claim in this regard as well. That is because the PSAC does not identify any procedural protection plaintiff was denied when officers allegedly prevented his access to the Residence to retrieve his personal property. (*See id.* ¶¶ 34, 35); *see also Washington*, 552 F. App'x at 174. In fact, the PSAC suggests that defendant Ismaili lived in the Residence (*id.* ¶ 16) and that she obtained a TRO against plaintiff (*id.* ¶ 31), which would provide a legal explanation for the officers' preventing plaintiff from entering the Residence without Ismaili's permission. (*Id.* ¶¶ 34, 35). That leaves only the generic assertion that plaintiff was deprived of his "interests without adequate notice and a meaningful opportunity to be heard." (ECF 23-1 ¶ 48). But that is a legal conclusion, and it does not provide a plausible factual basis for plaintiff's procedural due process claim. *See, e.g.*, *Winfield Scott Tower Urban Renewal LP v. Luciani*, 23-CV-133 (MAS), 2025 WL 1942423, at *5 (D.N.J. July 15, 2025) (rejecting procedural due process claim based on plaintiff's "conclusory allegation that Defendants did not provide him" adequate process). Count III of the PSAC therefore fails to state a claim and is futile.

### D.    Section 1983 Conspiracy Claim (Count IV)

In Count IV of the PSAC, plaintiff claims that Sergeant LaFord and defendant Ismaili unlawfully conspired to secure a TRO against him in violation of his federal rights protected by section 1983. (ECF 23-1, Count IV). To state a claim for conspiracy under section 1983, "a plaintiff must allege that persons acting under color of state law conspired to deprive him of a

9

federally protected right." *Martinez v. New Jersey*, 11-CV-2223 (SDW), 2012 WL 2116407, at *6 (D.N.J. June 11, 2012) (internal quotations and citations omitted). Although a plaintiff need not claim "that the unlawful agreement was express," he must "allege[] that each participant shared in the general conspiratorial objective." *Washington v. City of Jersey City*, 24-CV-8597 (SDW), 2025 WL 1742694, at *10 (D.N.J. June 23, 2025) (internal quotations and citations omitted). Plaintiff's proposed section 1983 conspiracy claim fails in several respects.

To begin, the PSAC does not identify any independent "federally protected right" that LaFord and Ismaili's alleged scheme abridged. *Martinez*, 2012 WL 2116407, at * 6; *cf. Fong v. City of Newark*, 22-CV-7243 (SDW), 2023 WL 8947378, at *3 (D.N.J. Dec. 28, 2023) ("Section 1983 does not create any substantive rights."). Indeed, plaintiff offers no specifics to support his claim that the TRO was obtained unlawfully or based on false representations. He claims only that the TRO was "rushed and based on false, misleading, or coached statements." (ECF 23-1 ¶ 32; *see also id.* ¶ 51). But plaintiff does not allege what those statements were, what made them "false, misleading, or coached," or how they violated his federal rights. (*Id.* ¶ 32). His claims are entirely conclusory and fail to satisfy the relevant pleading standard. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation [under Rule 12(b)(6)] requires more than labels and conclusions . . . [f]actual allegations mut be enough to raise a right to relief above the speculative level.").

Nor has plaintiff plausibly alleged that LaFord and Ismaili "conspired" to obtain the TRO in question. The PSAC's only factual allegations in that regard are that "LaFord communicated with . . . Ismaili regarding domestic violence rights" (*id.* ¶ 28), and that the two "presented statements in a manner supportive of a restraining order." (*Id.* ¶ 29). But communicating about Ismaili's legal rights and how they might be protected does not evince a "conspiratorial objective" to abuse the TRO process or otherwise violate plaintiff's rights. *Washington*, 2025 WL 1742694,

10

at *10.  Further, the PSAC's allegations suggest that it was temporally impossible for Sergeant LaFord and defendant Ismaili to have reached any agreement regarding the TRO in the manner plaintiff claims.  According to the PSAC, the conspiracy between LaFord and Ismaili occurred sometime after the officers arrived at the Residence on March 2, 2025 at 4:18 P.M.  (*See* ECF 23-1 ¶¶ 15, 28–30).  But plaintiff avers elsewhere in his pleading that the TRO in question "was issued on or about March 2, 2025, at approximately 2:43 p.m.," more than an hour *before* officers allegedly arrived at the Residence.  (*Id.* ¶ 31).  Plaintiff's alleged timeline with respect to the TRO is thus not "plausible on its face."  *Twombly*, 550 U.S. at 570.  For all these reasons, the section 1983 conspiracy claim in Count IV of the PSAC is futile.

### E.    Section 1983 Municipal Liability Claim (Count V)

Count V of the PSAC asserts a section 1983 municipal liability claim against the Township under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).  (ECF 23-1, Count V). Plaintiff fails to state a *Monell* claim because, for the reasons explained above, the PSAC does not plausibly allege any underlying constitutional violations.  *See Harris v. Krasner*, 110 F.4th 192, 198 (3d Cir. 2024) ("[F]or *Monell* liability to attach, there must still be a violation of the plaintiff's constitutional rights" (internal quotations and citations omitted) (alteration in original)).  Count V of the PSAC therefore fails to state a claim and is futile.

### F.    Section 1983 Supervisory Liability Claim (Count VI)

Finally, in Count VI of the PSAC, plaintiff asserts a claim against Chief Garcia for supervisory liability under section 1983.  (ECF 23-1, Count VI).  Like the *Monell* claim, the claim for supervisory liability fails to satisfy the relevant pleading standard because plaintiff has not plausibly alleged an underlying constitutional violation.  *See, e.g.*, *Randle v. Twp. of Pennsauken*, 21-CV-1073 (KMW), 2023 WL 5816055, at *4 (D.N.J. Sept. 8, 2023) ("[L]iability pursuant to

Section 1983 against . . . supervisors must involve an underlying constitutional violation.") (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).  Accordingly, Count VI of the PSAC fails to state a claim and is futile.

### III. CONCLUSION

For the foregoing reasons, each of the six claims set forth in the PSAC fail to plausibly state a claim for relief.  The proposed amendments are thus futile.  Plaintiff's motion to amend is accordingly **DENIED**.  The Clerk of the Court is directed to terminate the motion at ECF 23.  Within fourteen days of the issuance of this Opinion and Order, the parties shall file letters proposing the appropriate next procedural steps in this case.

Dated:  June 10, 2026

*s/ Leda Dunn Wettre*
Hon. Leda Dunn Wettre
United States Magistrate Judge

Original:    Clerk of the Court
    cc:      Hon. Susan D. Wigenton, U.S.D.J.